IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

STEPHEN SCHOTT and ANGELA THOMAS,

    Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY and ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY,

    Defendants.

CASE NO. 4:24-CV-136 (CDL)

O R D E R

Plaintiffs' vehicles were insured by policies issued by Allstate Property and Casualty Insurance Company. The policies state that in the event of a total loss of an insured vehicle, Allstate would replace the vehicle or pay the insured the actual cash value of the totaled vehicle. Plaintiffs allege that when their insured vehicles were totaled, Allstate paid less than actual cash value for the total losses because although Allstate properly considered the advertised prices of comparable vehicles in determining a totaled vehicle's pre-loss value, Allstate improperly applied a "condition adjustment" to each comparable vehicle and thereby deflated the actual cash value of the totaled vehicle. Plaintiffs seek to represent a class of similarly situated Georgia policyholders who they contend were underpaid for total losses based on an impermissible "condition adjustment."

Presently pending before the Court are Allstate's motion to strike Plaintiffs' putative class action allegations (ECF No. 21) and Allstate's motion to dismiss for failure to state a claim (ECF No. 23). As discussed below, the Court denies the motion to dismiss as to Plaintiffs' breach of contract and fraud claims (Counts I and II) but grants the motion as to Plaintiffs' declaratory and injunctive relief claims (Counts III and IV). The Court denies Allstate's motion to strike the putative class allegations for breach of contract and fraud. Also before the Court is the motion to dismiss Allstate's parent company, Allstate Insurance Company. Plaintiffs do not oppose dismissal of their claims against Allstate Insurance Company, so the Court grants that motion (ECF No. 22).

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded

complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

Plaintiffs purchased automobile insurance policies from Allstate Property and Casualty Insurance Company, and they paid premiums for those policies. The policies provide coverage in the event of a total loss. Allstate's limit of liability is "the least of" the "actual cash value of the" vehicle "at the time of loss, which may include a deduction for depreciation" or "the cost to repair or replace the property or part to its physical condition at the time of loss."[1] 2d Am. Compl. Ex. 1, Schott Auto Policy 16, ECF No. 18-1 at 27. The policies provide that Allstate is required to disclose its evaluation of the totaled vehicle's actual cash value. *Id.* at 15, ECF No. 18-1 at 26.

Plaintiffs Stephen Schott and Angela Thomas sustained substantial damages to their insured vehicles. After determining that the vehicles were total losses, Allstate elected not to replace them. Thus, under the policies, it owed Plaintiffs the "actual cash value" of their vehicles. *Id.* at 16, ECF No. 18-1 at 27. Curiously, the policies do not define "actual cash value."

---

[1] There are other liability limits that do not apply here.

Allstate relied on a market valuation report prepared by CCC Intelligent Solutions, Inc. to determine the actual cash value of Plaintiffs' totaled vehicles. Allstate offered Plaintiffs the vehicle value amount shown on the market valuation report (less the deductible) for their total loss claims.

The market valuation reports describe the analysis used to determine the actual cash value of Plaintiffs' vehicles. CCC first considered Allstate's claim inspection, which catalogs the totaled vehicle's mileage, equipment, and condition. 2d Am. Compl. Ex. 2, Schott MVR 3, ECF No. 18-2; 2d Am. Compl. Ex. 3, Thomas MVR 3, ECF No. 18-3. If the inspector finds the condition of a component to be "fair," then he makes a downward adjustment to the totaled vehicle value based on that component. Schott MVR 7; Thomas MVR 7. If the inspector finds the condition of a component to be "dealer" quality, then he makes an upward adjustment to the totaled vehicle value based on that component. Schott MVR 7. If the inspector finds the condition of a component to be "private owner" quality, then no adjustment is made to the totaled vehicle value based on that component. Schott MVR 7; Thomas MVR 7.

After CCC considered Allstate's claim inspection for the totaled vehicles, CCC searched for comparable vehicles of the same make, model, and year as each totaled vehicle that were for sale by auto dealers near where each totaled vehicle was garaged. Schott MVR 10-11; Thomas MVR 9-10. CCC compared the options on

4

the comparable vehicles to the options on each totaled vehicle and adjusted each comparable vehicle's list price based on the make, model, trim, options, and mileage.  Schott MVR 11, Thomas MVR 10. Then, CCC made a "condition adjustment" to each comparable vehicle, which Allstate contends "sets that comparable vehicle to Private Owner condition."  Schott MVR 10; Thomas MVR 10.  The "condition adjustment" is the same dollar amount for each comparable vehicle: $959 for each of the three Schott comparable vehicles and $1,114 for each of the three Thomas comparable vehicles.  The totaled vehicle's "base vehicle value" is the weighted average of the adjusted values of the comparable vehicles.  CCC next applied the vehicle-specific component condition adjustment (the downward adjustment for "fair" components and the upward adjustment for "dealer" components).  In the final step, CCC adds tax and registration fees to this adjusted value and subtracts the deductible.  According to Allstate, this adjusted amount represents the actual cash value of the totaled vehicle, which amount Allstate offers to its insured for the loss.

The market valuation report does not explain how the comparable vehicle condition adjustment is calculated or why it is the same for each comparable vehicle.  Allstate now represents that the adjustment is meant to account for the price difference between the condition of an average vehicle being driven on the roadway and a vehicle that is ready for sale by a dealer.

5

Plaintiffs allege that the across-the-board adjustment is not based on the actual pre-loss condition of a totaled vehicle and that it is made without determining whether the dealer list prices for the comparable vehicles include an amount for reconditioning those vehicles. 2d Am. Compl. ¶ 33, ECF No. 18. The market valuation report also does not catalog the condition of the components for each comparable vehicle. Consequently, it is not evident from the market valuation report that the components for the comparable vehicles are in better condition than those of the totaled vehicles immediately before the loss. Plaintiffs assert that because of the condition adjustment to comparable vehicles, Allstate offered Schott and Thomas, respectively, $959 and $1,114 less than actual cash value for their totaled vehicle.[2]

## DISCUSSION

Plaintiffs assert claims against Allstate for breach of contract, fraud, and declaratory and injunctive relief. They brought this action as a putative class action under Federal Rule of Civil Procedure 23, claiming that there are hundreds of Georgia policyholders affected by Allstate's condition adjustment practices and that common questions of fact and law predominate.

---

[2] Plaintiffs allege that subject matter jurisdiction exists under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are hundreds or thousands of putative class members, minimal diversity exists because the named Plaintiffs are Georgia citizens and Allstate is an Illinois citizen, and the amount in controversy for the aggregated claims of putative class members exceeds $5,000,000.00. 2d Am. Compl. ¶ 23.

Allstate argues that Plaintiffs' complaint fails to state a claim under any of these theories. Allstate also contends that even if the individual Plaintiffs stated a claim, their putative class allegations should be dismissed. The Court addresses each argument in turn.

I. **Plaintiffs' Breach of Contract Claims**

Plaintiffs allege Allstate breached its policies by offering them less than actual cash value for their total loss claims by applying the comparable vehicle condition adjustment. Allstate responds that it did not breach the policies because the comparable vehicle condition adjustment takes the totaled vehicles' condition into account when calculating the total loss amount, which is allowed under the policies and Georgia law.

We begin with the language of the contract. Here, Allstate does not dispute that the policies require it to pay its insureds either (a) "actual cash value" of the vehicle at the time of loss or (b) the cost to repair or replace the vehicle. Schott Auto Policy 16, ECF No. 18-1 at 27. Allstate elected the "actual cash value" option. The policies do not define "actual cash value" or state how it is to be calculated. But the absence of a policy definition does not automatically render clear language ambiguous, *i.e.*, subject to two or more reasonable but conflicting meanings. "Actual" means "[e]xisting in fact; real." ACTUAL, Black's Law Dictionary (12th ed. 2024). "Cash" means "[m]oney or

7

its equivalent." CASH, Black's Law Dictionary (12th ed. 2024). And "value" means "[t]he monetary worth or price of something; the amount of goods, services, or money that something commands in an exchange." VALUE, Black's Law Dictionary (12th ed. 2024). Construing these words together, the phrase "actual cash value" has the same meaning as "fair market value."

"Fair market value," which the Court finds is another term for "actual cash value," is "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect." *Id.* (noting that "fair market value" is "[a]lso termed actual value [and] actual cash value"). The Court need look no further to ascertain what Allstate agreed to pay Plaintiffs for their total losses.

The remaining question is whether Plaintiffs adequately allege that Allstate failed to offer them actual cash value—fair market value—for their totaled vehicles. The Court finds that they did. The parties agree that an insurance company may determine the actual cash value of a totaled vehicle by averaging dealer-advertised prices of comparable vehicles, with adjustments for options, mileage, and condition as compared to the totaled vehicle. Allstate, which must determine what a willing buyer and seller would negotiate for the sale of the Plaintiffs' pre-wreck vehicles, may obviously consider the condition of those vehicles.

8

But it may not arbitrarily reduce the value using some method that does not closely connect that reduction to fair market value. And that is what Plaintiffs allege Allstate did. Those allegations must be taken as true at this stage of the litigation, and they clearly state a claim for breach of contract. Accordingly, Allstate's motion to dismiss Plaintiffs' breach of contract claims is denied.

Allstate's reliance upon *Signor v. Safeco Insurance Company* is misplaced. 72 F.4th 1223 (11th Cir. 2023). In *Signor*, which was decided at the summary judgment stage following discovery, the policy incorporated a Florida statute that permits an insurer to calculate actual cash value based on the "actual cost to purchase a comparable motor vehicle." *Id.* at 1228 (quoting Fla. Stat. § 626.9743(5)(a)). The *Signor* insurer calculated the value of the insured's vehicle by finding the advertised prices of twelve comparable vehicles, applying a "Uniform Condition Adjustment" to reduce those prices, and then averaging the resulting prices. The Eleventh Circuit found that the method did not violate the Florida statute because (1) the parties agreed that the evidence established that the "Uniform Condition Adjustment" accounted "for the difference between dealership vehicles that were in 'Dealer Ready' condition and privately owned vehicles that were in 'Normal Wear' condition," *id.* at 1226, and (2) the Florida statute did "not require that a settlement based upon the vehicle's actual

9

cost be *equal* to the actual cost to purchase a comparable vehicle," *id.* at 1230. Here, in contrast, Plaintiffs allege that Allstate's condition adjustment does not actually compare the condition of the comparable vehicles to the totaled vehicle and that application of the condition adjustment thus does not result in the actual cash value of the totaled vehicle.

**II. Plaintiffs' Fraud Claims**

In addition to their breach of contract claims, Plaintiffs allege that Allstate fraudulently represented that it would pay actual cash value for totaled vehicles even though it never intended to do so. And when Allstate made its offers of "actual cash value" through its market valuation reports, knowing them to be untrue, it committed the tort of fraudulent misrepresentation against insureds who relied upon the market evaluation reports.

Allstate characterizes Plaintiffs' fraud claims as fraudulent inducement claims and argues that the claims fail because Plaintiffs elected to affirm their policies. But Plaintiffs' claims are not for fraudulent inducement. Instead, Plaintiffs allege that Allstate committed fraud on its insureds following formation of the contract. The Court finds no basis for dismissing claims that were never asserted.

Allstate's other argument is that Plaintiffs' fraud claims fail because Plaintiffs did not allege a misrepresentation or justifiable reliance. But they did. Plaintiffs allege that

Allstate falsely represented that it would pay actual cash value for a total loss and then falsely represented that the amount offered on the market valuation report was actual cash value. Plaintiffs further allege that they relied on these misrepresentations to their detriment when they received or were offered a total loss payment of less than actual cash value. Accordingly, the Court rejects Allstate's argument that Plaintiffs' fraud claims fail for lack of allegations regarding a misrepresentation or justifiable reliance. The Court denies Allstate's motion to dismiss the fraud claims.[3]

### III. Plaintiffs' Claims for Declaratory and Equitable Relief

In addition to their claims for damages, Plaintiffs want declaratory and injunctive relief. They seek a declaration that Allstate's practice of using the uniform condition adjustment for comparable vehicles results in a breach of contract and a violation of Georgia law—essentially a judicial confirmation that they breached the contract. Plaintiffs also request that the Court enjoin future use of the condition adjustment when calculating actual cash value of a totaled vehicle.

To the extent that Plaintiffs seek a declaration that Allstate's *past* practices resulted in a breach of contract and a violation of Georgia law, that claim for declaratory relief

---

[3] Allstate did not clearly assert any other grounds for dismissal of the fraud claim, and the Court declines to address grounds that Allstate did not raise in its motion to dismiss.

11

involves the exact same dispute as the breach of contract claim and is thus redundant. If Plaintiffs prevail on their breach of contract claim, they will be able to secure full, adequate, and complete relief on their claims for past injuries. The Court recognizes that in some cases, a declaratory judgment claim may proceed as an alternative to a breach of contract claim, such as when there is a present dispute about non-speculative future obligations under a contract. *See Lezhava v. Am. Home Mortg. Servicing, Inc.*, No. 1:08-CV-3605-BBM, 2009 WL 10666352, at *10 (N.D. Ga. May 15, 2009) (declining to dismiss declaratory judgment claim that was pled as an alternative to a breach of contract claim where there was an actual controversy regarding the borrower's obligations to make future mortgage payments); *cf. Newton v. Brighthouse Life Ins. Co.*, No. 1:20-CV-02001-AT, 2021 WL 2604654, at *15 (N.D. Ga. Mar. 11, 2021) (permitting a declaratory judgment claim pled as an alternative to a breach of contract claim where the plaintiff sought equitable relief in the form of reinstatement of a lapsed life insurance policy). These circumstances don't exist here.

Quite frankly, the Court is puzzled as to what useful purpose a declaratory judgment would serve. *Cf. Bauer v. State Farm Life Ins. Co.*, No. 1:21-CV-00464-SDG, 2022 WL 912687, at *4 (N.D. Ga. Mar. 28, 2022) ("A declaratory judgment does not serve a useful purpose where it is completely duplicative of a breach of contract

12

claim."); *Braddy v. Morgan Oil Co.*, 358 S.E.2d 305, 307 (Ga. Ct. App. 1987) (affirming grant of summary judgment on declaratory judgment claim under Georgia's declaratory judgment statute because the question raised by the declaratory judgment claim would "necessarily be resolved by the outcome of the breach of contract claim"). The Court therefore dismisses Plaintiffs' claims for retrospective declaratory and injunctive relief because those claims are duplicative of their breach of contract claim and otherwise serve no legitimate legally authorized purpose.

Turning to Plaintiffs' claims for *prospective* injunctive relief for potential future injuries, Plaintiffs now appear to recognize that their "claim" for injunctive relief in Count IV is not a viable standalone claim because an injunction is a *remedy* that is potentially available if a plaintiff prevails on a substantive claim. Accordingly, Count IV is dismissed as a standalone claim. Plaintiffs argue that they may still pursue the remedy of an injunction barring future use of the comparable vehicle condition adjustment. Allstate responds that Plaintiffs did not allege sufficient facts to establish Article III standing for such a claim. If "a plaintiff seeks prospective relief . . . he must 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1357 (11th Cir. 2021) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th

13

Cir. 1999). "And that future injury must be 'real,' 'immediate,' and 'definite.'" *Id.* (quoting *Malowney*, 193 F.3d at 1347). The possibility that a Plaintiff "may someday be in another car accident . . . and still be insured by [Allstate] under the same or a similar policy being interpreted the same way, thereby having this issue present itself again . . . is too contingent to constitute a 'substantial likelihood' of future injury." *Id.* (first and third alterations in original) (quoting *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1215 (11th Cir. 2019)). Here, Plaintiffs contend that they are still currently insured by Allstate, and they assert that Allstate may in the future breach its contractual obligations. They do not, however, allege facts to establish a substantial likelihood of future injury. The Court thus finds that Plaintiffs lack standing to assert claims for prospective declaratory and injunctive relief, and those claims are dismissed.

**IV. Plaintiffs' Class Claims**

Allstate argues that even if Plaintiffs' individual claims survive dismissal, the Court should determine at this stage that a class action is not viable here and strike the class action allegations. The Court understands its obligation to address class certification at the earliest feasible stage in the proceeding; if a "complaint, as pled, cannot sustain class action certification as a matter of law," then the plaintiff's claims may only proceed

14

individually and class certification will not be allowed. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 (11th Cir. 2009); *see also Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (issuing writ of mandamus directing a district court to decertify a class where the "failure of predominance" was "readily apparent from a reading of" the complaint). The Court is unpersuaded at this stage, however, that Plaintiffs' complaint cannot sustain class certification. Rather, the Court finds that Plaintiffs' allegations plausibly demonstrate that discovery may support the finding that class certification should be ordered.

Plaintiffs allege that Allstate treated every putative class member the same by paying less than actual cash value for their totaled vehicles; Allstate allegedly did this by applying a flat-rate condition adjustment to comparable vehicles even though it did not actually consider the condition of the comparable vehicles or determine how the condition of the totaled vehicles diverged from that condition. So, at this point in the litigation, Plaintiffs allege that the uniform condition adjustment results in a breach of contract every time it is applied and that Allstate made a fraudulent misrepresentation every time it provided an insured with a market valuation report that contained an arbitrarily reduced "actual cash value." If, upon a motion for class certification, Plaintiffs do not meet their burden of showing that class certification is appropriate under Federal Rule of Civil

15

Procedure 23 by demonstrating, among other things, that class issues predominate over individual issues, then Plaintiffs will not be entitled to class certification. But based on the present record, the Court finds that it would be premature to strike the putative class allegations for breach of contract and fraud.[4] The motion to strike (ECF No. 21) is denied.

## CONCLUSION

For the reasons set forth above, the Court grants Allstate Insurance Company's motion to dismiss (ECF No. 22), grants Allstate's motion to dismiss (ECF No. 23) as to Counts III (declaratory judgment) and IV (equitable relief) but denies it as to Counts I (breach of contract) and II (fraud), and denies Allstate's motion to strike the putative class allegations for the breach of contract and fraud claims (ECF No. 21).

IT IS SO ORDERED, this 15th day of May, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[4] The Court observes that Plaintiffs will have a mighty hill to climb on class certification of the fraud claims, but the Court cannot find today based on the allegations in the complaint that Plaintiffs must be prevented from even attempting to climb that hill.