IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| STEPHEN SCHOTT, *et al.*, | * | |
| Plaintiffs, | * | |
| vs. | * | CASE NO. 4:24-CV-136 (CDL) |
| ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, | * | |
| Defendant. | * | |

O R D E R

"Arrogant zealotry," which the Court distinguishes from effective zealous representation, arises when a party adheres to a position without even considering the opposing position, thus making compromise impossible and contravening the fundamental goal of civil procedure: securing the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. The Court views such zealotry as a litigation failure. Rather than expanding this failure with a sanctions show cause order, however, the Court directly addresses the disagreements giving rise to it in hopes of resolving the pending disputes expeditiously. The disagreements are summarized as follows: (1) whether several documents should retain the confidentiality designations assigned by the producing party; (2) whether certain exhibits on the docket should continue to be restricted from public access; and (3) whether Allstate Property & Casualty

Insurance Company should be required to produce certain documents that are related to exhibits Allstate may rely on in this action. For the reasons set forth below, the Court overrules in part and sustains in part Plaintiffs' objections to CCC Intelligent Solutions Inc.'s confidentiality designations (ECF No. 83), grants in part and denies in part Plaintiffs' motion to unseal (ECF No. 96), grants Allstate's motion to retain seal (ECF No. 97), and denies Plaintiffs' latest motion to compel (ECF No. 102).

DISCUSSION

**I. The Confidentiality Issues**

The protective order in this action permits a producing party to designate documents as "confidential" or "attorneys' eyes only." Am. Stipulated Protective Order 1-2, ECF No. 73. The protective order also permits a receiving party to challenge confidentiality designations and states that any evidence used in connection with a motion, hearing, or trial shall be public unless the producing party demonstrates a compelling reason why the materials should be filed under seal. *Id.* at 8-9.

Plaintiffs argue that several documents that Allstate and non-party CCC Intelligent Solutions Inc. produced during discovery should not be classified as confidential and that the Court should unseal portions of several documents that were filed with restricted access. Allstate objects to unsealing

certain documents and/or removing their confidentiality designations. These issues are presented in a Joint Statement Regarding Discovery Dispute (ECF No. 83), Plaintiffs' Motion to Unseal (ECF No. 96), and Allstate's Motion to Retain Seal (ECF No. 97). The Court addresses each set of documents in turn.

A. The CCC Documents

CCC Intelligent Solutions Inc. is a technology company that serves the insurance industry. Allstate is CCC's customer. When Allstate declares its insured's vehicle to be a total loss, it obtains a market valuation report from CCC, which contains CCC's opinion of the vehicle's estimated pre-accident value. Each market valuation report is created using CCC's proprietary tools, processes, formulas, and market research.

*1. The "Attorneys' Eyes Only" Documents*

CCC designated six documents as "Attorneys' Eyes Only" material.[1] CCC asserts that these documents (1) contain

[1] The documents are:

1. Kevin Murphy, Landy Litig. Supp. Grp., *CCC Condition Usage/Wear Standards Validation Study*, Dec. 21, 2011, Gintvainis Decl. (May 26, 2026) Ex. 1, ECF No. 83-3 at 11-82.
2. Deb Davis-Lenane & Guy Lammers, Maritz Rsch., *CCC Vehicle Condition Market Value Impact Study*, Sept. 5, 2012, Gintvainis Decl. (May 26, 2026) Ex. 2, ECF No. 83-3 at 84-145.
3. Bernard Siskin, *Suppl. App. A to Maritz Rsch. Sept. 5, 2012 Report*, Gintvainis Decl. (May 26, 2026) Ex. 3, ECF No. 83-3 at 146-148.
4. *Condition Data Excel Spreadsheet*, Gintvainis Decl. (May 26, 2026) Ex. 4, ECF No. 83-3 at 149-183.
5. *Condition Data Excel Spreadsheet*, Gintvainis Decl. (May 26, 2026) Ex. 5, ECF No. 83-3 at 184-212.
6. Kevin G. O'Neil, *Database Analysis & Attachment Parameter Calculation Project*, Dec. 2, 2020, Gintvainis Decl. (May 26, 2026) Ex. 6, ECF No. 83-3 at 213-219.

proprietary data that CCC uses in its valuation formulas, (2) describe the scientific methodology CCC uses to select which comparable vehicles are used in its valuation process, or (3) are validation studies that are the product of extensive research CCC undertook to verify the accuracy of its valuation methodology.

Under the protective order, documents may be designated as "Attorneys' Eyes Only Material" if they contain "confidential, sensitive or proprietary business information . . . that the Producing Party asserts in good faith is so competitively sensitive that the receipt of the information by parties to the litigation could result in competitive harm to the Producing Party." Am. Stipulated Protective Order 2. Plaintiffs contend that the six challenged documents are not "confidential" because (1) CCC represented to Allstate during 2011 contract negotiations that Allstate would be allowed to review CCC's internal product validation audits upon Allstate's request, and (2) CCC contractually agreed to allow Allstate to examine its documents, information, procedures, and records that related to the services CCC provides to Allstate. But as CCC points out, its contract with Allstate prohibits Allstate from disclosing CCC's confidential information that Allstate receives from CCC. Accordingly, CCC's agreement to share information with Allstate *subject to confidentiality protections* does not amount to a

waiver of confidentiality protections for that information. Plaintiffs' argument to the contrary is disingenuous. It ignores the undisputed fact that CCC intended its disclosure to Allstate, its customer, to be protected. There may be other reasons supporting de-designation of the documents, but the mere fact that CCC provided access to the documents to Allstate is not one of them, and counsel should have recognized this before pursuing this unpersuasive argument.

Plaintiffs also assert that the two challenged validation studies are not "confidential" because they were prepared under the supervision of a court-appointed monitor when CCC settled *Carter v. Allstate Insurance Co.*, an Illinois state court class action regarding CCC's valuation methodology.[2] The court-appointed monitor was responsible for assessing the court-approved validation studies of CCC's processes and methodology. The monitor's reports were to be filed with the court, the plaintiffs' counsel, and the insurance carriers (which included Allstate). Dep. Notice Ex. B, Stipulation of Class Action Settlement (July 15, 2005) § 32(c)-(d), ECF No. 80-1 at 30. The parties to that settlement agreed that if CCC designated the

[2] Plaintiffs rely on the Stipulation of Class Action Settlement, ECF No. 80-1 at 13-53. That stipulated agreement states that after the agreement was executed, the parties would move for preliminary approval of the agreement. Stipulation of Class Action Settlement § 5. Plaintiffs did not clearly point the Court to a final order by the *Carter* court. The Court assumes for purposes of the present motion that the *Carter* court entered an order that required the validation studies and monitoring as set forth in the stipulation.

monitor's reports as confidential, the reports would be sealed under the applicable protective order. *Id.* § 32(d). Plaintiffs in this action did not present any evidence CCC's confidential information was subject to public disclosure because of the monitor's work in *Carter*. Rather, Plaintiffs appear to acknowledge that the monitor's reports were filed under seal because CCC designated them as confidential. Thus, the fact that the validation studies were prepared under the supervision of a court-appointed monitor does not establish a waiver of confidentiality protections for CCC's information. Accordingly, the Court rejects Plaintiffs' challenges to the "Attorneys' Eyes Only Material" designations based on Plaintiffs' waiver theory.

Stretching desperately for any reason to de-designate the confidential documents, Plaintiffs argue that even if CCC did not waive its right to insist on confidentiality of the six challenged "Attorneys' Eyes Only" documents, the documents are more than a decade old and could not possibly be commercially sensitive. In support of this argument, Plaintiffs rely on a single district court case where a logistics company alleged that its former employees used the company's confidential information to gain an unfair advantage in competition with the company. *See Blue-Grace Logistics LLC v. Fahey*, 653 F. Supp. 3d 1172, 1179 (M.D. Fla. 2023). The former employees pointed to *evidence* that the "confidential" information they obtained while

working for the logistics company was no longer relevant or useful in the hands of a competitor by the time they started working for a new employer, and the logistics company did not point to any *evidence* to create a genuine fact dispute on the issue. Accordingly, the information was not confidential, proprietary information whose theft could support a breach of restrictive covenant claim. *Id.* A first-year law student could easily distinguish *Fahey* from the circumstances in this case. Unlike in *Fahey,* Allstate and CCC presented *evidence* that the six challenged "Attorneys' Eyes Only" documents remain commercially sensitive, which Plaintiffs did not rebut. Rather, Plaintiffs speculate that the documents are too old to be considered commercially sensitive. Speculation is not enough. Plaintiffs' experienced counsel certainly knows this. The Court thus rejects Plaintiffs' staleness challenge to the "Attorneys' Eyes Only Material" designations.

Lastly, clinging to the hope that some argument may work, Plaintiffs contend that even if the challenged documents are mostly entitled to protection, the two validation studies contain information that is not sensitive, confidential information and thus does not need to be restricted in the event that the validation studies are presented as exhibits to support

or oppose a motion.[3] Now, Plaintiffs may have stumbled on a winner. But the Court is perplexed as to why this issue could not have been resolved without burdening the Court and unnecessarily expanding this litigation. Surely, everyone agrees that if Allstate uses these studies to support its defenses in this case, then any portions that do not contain commercially sensitive information should be publicly available. Perhaps because they were too busy crafting their previously rejected creative arguments, Plaintiffs' counsel failed to even state which specific portions of the validation studies should be de-designated as "Attorneys' Eyes Only;" instead, they noted that another district court unsealed portions of the two validation studies that it found to contain no sensitive, confidential information. *See Fortson v. Garrison Prop. & Cas. Ins. Co.*, No. 1:19-CV-294, 2022 WL 824802, at *6 (M.D.N.C. Mar. 18, 2022) (finding that "the studies are predominately comprised of confidential information for CCC's internal business use that would harm CCC if disclosed" but also contained "non-confidential information"). CCC appears to acknowledge that portions of the validation studies are not sensitive CCC

[3] These studies are: Kevin Murphy, Landy Litig. Supp. Grp., *CCC Condition Usage/Wear Standards Validation Study*, Dec. 21, 2011, Gintvainis Decl. (May 26, 2026) Ex. 1, ECF No. 83-3 at 11-82, and Deb Davis-Lenane & Guy Lammers, Maritz Rsch., *CCC Vehicle Condition Market Value Impact Study*, Sept. 5, 2012, Gintvainis Decl. (May 26, 2026) Ex. 2, ECF No. 83-3 at 84-145.

information, but CCC did not state which portions of the studies could be publicly disclosed without causing harm to CCC.

Based on the Court's review of the two validation studies, the Court agrees that portions of the studies—such as information about the people who prepared them—is not CCC's commercially sensitive information that must be restricted. The Court declines to line-edit the studies to state which portions may remain confidential under the protective order. Within fourteen days of today's order, counsel for the parties shall confer with counsel for CCC and reach an agreement on which portions of the validation studies need not be redacted from the public docket in the event that the studies are relied on to support or oppose a future motion. The Court expects counsel to accomplish this task without further intervention from the Court.

*2. The "Confidential" Documents*

CCC also produced seven documents that are designated as "Confidential."[4] CCC asserts that these documents are non-public

---

[4] The documents are:

1. CCC Intelligent Solutions, *Build Sheet Guide*, Gintvainis Decl. (May 26, 2026) Ex. 7, ECF No. 83-3 at 220-224.
2. CCC Intelligent Solutions, *Valuation*, Gintvainis Decl. (May 26, 2026) Ex. 8, ECF No. 83-3 at 225-245.
3. CCC Intelligent Solutions, *Valuation*, Gintvainis Decl. (May 26, 2026) Ex. 9, ECF No. 83-3 at 246-265.
4. CCC Intelligent Solutions, *Desk Reference Guide*, Gintvainis Decl. (May 26, 2026) Ex. 10, ECF No. 83-3 at 266-274.
5. CCC Intelligent Solutions, *Desk Reference Guide*, Gintvainis Decl. (May 26, 2026) Ex. 11, ECF No. 83-3 at 275-283.

CCC product guides and training materials that CCC only provides to its customers subject to a contractual confidentiality agreement. Under the protective order, documents may be designated as "Confidential Material" if they contain "confidential, sensitive or proprietary business information." Am. Stipulated Protective Order 1-2. CCC acknowledges that "much of" the content in the seven documents is publicly available in other documents, but CCC contends that these seven documents should nonetheless be considered confidential and proprietary because of the way they are organized.

The seven challenged "Confidential" documents are five customer-facing reference guides and two customer-facing PowerPoint presentations that are intended to help a CCC customer's personnel understand how to use CCC's valuation software and how to communicate with an insured about CCC's valuation reports. CCC presented evidence that these documents are only provided to its customers pursuant to contractual confidentiality agreements. Plaintiffs, on the other hand, presented evidence that some of the information contained in the challenged documents is publicly disclosed in a public "Total Loss Glossary," public interactive training materials, public knowledge base articles, CCC's public YouTube channel, and CCC's

6. CCC Intelligent Solutions, *Options & Condition*, Gintvainis Decl. (May 26, 2026) Ex. 12, ECF No. 83-3 at 284-320.
7. CCC Intelligent Solutions, *Valuation Training*, Gintvainis Decl. (May 26, 2026) Ex. 13, ECF No. 83-3 at 321-358.

public Facebook page. Based on the Court's review, the publicly available information overlaps with the seven "Confidential" documents to such an extent that at least some portions of the "Confidential" documents contain information that has been made public and is not entitled to protection under the protective order. CCC did not clearly explain which portions of the documents are truly non-public and thus entitled to protection as commercially sensitive material. Accordingly, the Court sustains Plaintiffs' objection to the "Confidential" designations for all seven disputed documents to the extent that the documents may not be restricted in their entirety, although truly confidential information may be redacted. Within fourteen days of today's order, counsel for the parties shall confer with counsel for CCC and reach an agreement on which portions of the seven disputed documents are not "Confidential" and need not be redacted from the public docket in the event that any of the documents is relied on to support or oppose a future motion. It goes without saying that the Court expects counsel to accomplish this task without further intervention from the Court.

B. The Allstate Documents

Plaintiffs submitted several confidential Allstate documents as exhibits to a recent motion to compel.[5] In

[5] The Court has already ruled on that motion to compel (ECF Nos. 80 & 81). Order (June 12, 2026), ECF No. 95.

accordance with the protective order and the Court's order granting Allstate's motion to seal the documents, access to the exhibits is restricted to case attorneys of record and Court personnel. Plaintiff contends that parts of several exhibits should not be restricted, and they filed a motion to un-restrict portions of the documents. Allstate opposes Plaintiffs' motion to un-restrict several documents and filed a motion to maintain the seal on other documents. As a preliminary matter, the Court's electronic filing system does not accommodate unsealing part of a document. Therefore, the documents that were submitted in connection with the prior motion to compel shall remain restricted. The Court reviewed Plaintiffs' motion to partially lift the seal, Allstate's response to that motion, and Allstate's motion to maintain the seal. The Court makes the following rulings, which shall apply if the documents are relied upon at trial or in connection with a future motion. For the sake of clarity, the Court uses the Bates numbers referenced by the parties to identify the pages.

*1. Pages Allstate Does Not Oppose Un-Restricting*

Allstate does not oppose un-restricting the following pages:

- Allstate P&C_011022. *See, e.g.,* Friedland Decl. Ex. 4, Request for Proposal Response, ECF No. 83-1 at 40.
- Allstate P&C_010921. *See, e.g.,* Joint Statement Ex. G, Request for Proposal Response, ECF No. 83-8 at 2.

- ♦ Allstate P&C_024541. *See, e.g.*, Friedland Decl. Ex. 6, Email from R. Stokes (Mar. 16, 2012), ECF No. 83-2 at 22.
- ♦ Allstate P&C_024555-56. *See, e.g.*, Friedland Decl. Ex. 7, Email Chain (Mar. 2012), ECF No. 83-2 at 24-25.
- ♦ Allstate P&C_006348-49. *See, e.g.*, Friedland Decl. Ex. 8, Email Chain (Aug. 2012), ECF No. 83-2 at 27-28.

Accordingly, these pages need not be restricted if they are relied upon at trial or in connection with a future motion.

*2. Allstate P&C_011043 and Allstate P&C_010996*

Allstate P&C_011043 is a single page from CCC's June 17, 2011 response to Allstate's request for proposal. *See, e.g.*, Friedland Decl. Ex. 4, Request for Proposal Response 22, ECF No. 83-1 at 61. The page includes CCC's answers to seven questions Allstate presented about the functionality of CCC's software as of June 17, 2011. Allstate P&C_010996 is a single page from Audatex's June 17, 2011 response to Allstate's request for proposal. *See, e.g.*, Joint Statement Ex. G, Request for Proposal Response, ECF No. 83-8 at 77. The page includes Audatex's answers to two questions Allstate presented about the functionality of Audatex's software as of June 17, 2011.

Allstate argues that the two pages reveal sensitive information about its selection of a third party vendor. Based on the Court's review, the pages contain basic questions about whether each proposed vendor's software had specific capabilities as of fifteen years ago. Plaintiffs' motion

focuses on a single question and answer from each response: Question 5, regarding internal product validation audits. Allstate did not explain how Question 5 and the responses to it reveal sensitive information about Allstate's vendor selection process. The Court thus grants Plaintiffs' motion to un-restrict these two pages to the extent that Question 5 and Answer 5 need not be redacted from Allstate P&C_011043 and Allstate P&C_010996 if those pages are relied upon at trial or in connection with a future motion.

*3. Allstate P&C_022381*

Allstate P&C_022381 is the Executive Summary slide from a PowerPoint presentation regarding Allstate's 2011 decision to hire a new valuation report provider. *See, e.g.*, Mot. to Compel Ex. K, Allstate Claims & Procurement PowerPoint (Sept. 15, 2011), ECF No. 81-3 at 3. The slide provides an explanation of Allstate's decision, the approach Allstate used to make the decision, and the key criteria Allstate considered when it made the decision. The Court is persuaded that this information is commercially sensitive and is entitled to protection. Plaintiffs appear to contend that some of the information on the Executive Summary slide is not "confidential" because Allstate agreed to un-restrict another slide from the presentation. But the two slides contain different information, and Allstate's agreement to un-restrict one slide does not constitute a waiver

of confidentiality of the other. The present record thus does not support Plaintiffs' motion to un-restrict Allstate P&C_022381, and the motion is denied. If these documents are to be used at trial, the Court will decide at the final pretrial conference how they can best be presented to the jury while providing reasonable protection from unwarranted disclosure.

*4. Allstate P&C_010215*

Allstate P&C_010215 is part of an email chain between Allstate procurement employees regarding the 2019 selection of a third party vendor. *See, e.g.*, Friedland Decl. Ex. 10, Email Chain (July 11, 2019), ECF No. 83-2 at 50. Plaintiffs contend that the email is not "confidential" because Allstate agreed to provide it to CCC during this litigation. But Allstate provided the email to CCC's counsel pursuant to the protective order, and the Court is not persuaded that this production constitutes a waiver of confidentiality protections. Plaintiffs further argue that they only want to un-restrict a single sentence from the email discussing CCC's source code; they assert that the email shows that CCC "was willing to produce its source code to Allstate" and that this issue is relevant to a discovery dispute.[6] Pls.' Mot. to Unrestrict 10, ECF No. 96. Based on the Court's review, the email contains commercially sensitive

[6] Plaintiffs' description of the email does not appear to be consistent with the actual language of the email.

information related to negotiations with a third party vendor. The fact that the email may be relevant to a discovery dispute does not override Allstate's interest in keeping the information confidential. Accordingly, the present record does not support Plaintiffs' motion to un-restrict Allstate P&C_010215, and the motion is denied. To the extent that these materials become relevant at trial and thus reviewable by the jury, the Court will decide at the final pretrial conference the logistics of that presentation.

*5. Allstate P&C_011052 to Allstate P&C 011139*

Allstate filed a motion to retain the seal on Exhibit 4 to Plaintiffs' reply in support of a prior motion to compel. *See* Reply Ex. 4, Mitchell Resp. to RFP (June 3, 2011), ECF 91-2. Plaintiffs did not file a response brief to the motion to retain the seal (ECF No. 97). Because the motion is unopposed, it is granted.

*6. A Note About Future Confidentiality Disputes*

In their filings, Plaintiffs assert that they reserve the right to ask the Court to unseal additional portions of documents in the future. As explained above, the Court cannot unseal portions of documents that are already in the record. If Plaintiffs contend that a confidential document (1) is reasonably likely to be submitted as an exhibit in connection with a motion or at trial, and (2) contains information that

should be publicly available in the event the document is relied on in connection with a motion or at trial, then Plaintiffs' counsel should follow the appropriate process outlined in the protective order. The Court expects that counsel will be able to resolve any further confidentiality disputes without Court intervention *before* any document is submitted as an exhibit.

**II. Plaintiffs' Motion to Compel (ECF No. 102)**

As discussed above, two validation studies of CCC's valuation methodology were prepared under the supervision of a court-appointed monitor when CCC settled *Carter v. Allstate Insurance Co.*, an Illinois state court class action regarding CCC's valuation methodology. Under the 2005 stipulation of class action settlement in *Carter*, the monitor was required to assess the validation studies and file annual reports with the *Carter* court during his five-year term. Plaintiffs in this action requested (1) all reports from the monitor in the *Carter* case, (2) all communications between Allstate and the monitor that resulted from the *Carter* case, and (3) all communications between Allstate and CCC regarding the monitor or the validation studies that resulted from the *Carter* case.

Allstate objects to producing the monitor reports for a variety of reasons. One key reason is presented in a footnote: although Allstate searched its records for the reports, it could not locate the reports in its records. Some arguments don't

pass the "come on, man" test. The Court finds it incredulous that Allstate does not have access to these records either directly in its own files or that it cannot reasonably obtain them. Allstate also contends that it does not have control over the monitor reports because (a) CCC designated them as confidential with the *Carter* court, (b) the documents are subject to a protective order in *Carter*, and (c) although Allstate asked CCC to voluntarily produce the monitor reports in this action, CCC refused to do so. Surely, Allstate can coax CCC to produce the monitor reports that were prepared for Allstate's benefit via a contractual relationship between Allstate and CCC. The Court rejects Allstate's "we don't have them" response to the Plaintiffs' motion to compel. The Court is confident that it will not be necessary to order CCC to appear in Columbus for a hearing to explain why it won't produce evidence relevant to this litigation, which its customer authorized it to produce.

Regarding the communications between Allstate and the monitor and/or CCC that resulted from the *Carter* case, Allstate argues that it should not be required to produce such communications because the burden of such a production would far outweigh the proposed discovery's likely benefit and thus the production would not be proportional to the needs of the case. In support of this argument, Allstate represents that the

communications are not reasonably accessible to Allstate because they are between fifteen and twenty years old and would have to be searched for and pulled from Allstate's storage archives. The Court also finds this "woe is me" response unpersuasive. For a sophisticated insurer to suggest that it just can't find something in its own files defies common sense. Whether the documents would be privileged, the Court cannot possibly say given that the documents are not part of the current record.

Notwithstanding the pervasive weakness in Allstate's arguments opposing Plaintiffs' motion to compel, the Court has strong reservations as to whether Plaintiffs, as movants, have carried their burden on their motion. The Court understands that many lawyers believe that they can win cases in discovery. So they fight to the death on discovery issues that often have very little to do with the primary issue in the litigation. This scatter-gun approach often leads to confusion and distracts from the appropriate target. Here, the primary question is whether Allstate properly evaluated Plaintiffs' property damage under their insurance policies. Plaintiffs should be allowed to discover the method used for these Plaintiffs, including any information about that methodology that is relevant to how that method was employed here, as long as such discovery is properly proportional.

The Court understands that Allstate opposes categorical exclusion of the 2011 and 2012 validation studies. It is unclear to the Court how these old documents would be admissible and relevant on the questions the jury must decide in this case regarding the 2024 valuation of Plaintiffs' vehicles, but that issue is not presently before the Court. Given that Allstate is dangling the possibility of trying to use the old validation studies in this case, Plaintiffs argue that they are entitled to discover other documents and communications related to the prior settlement that might address the soundness of the studies (or lack thereof). Plaintiffs have not convinced the Court that this evidence is relevant and proportional to the claims in this case. The bottom line is that by pressing every possible argument in its briefing, Plaintiffs have failed to focus the Court on a persuasive argument as to why these materials relating to the previous settlement are discoverable. As the movant, they had the burden to convince the Court that their motion should be granted. They have failed to carry that burden. Because Plaintiffs failed to carry their burden that the documents and communications are "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), the Plaintiffs' motion to compel these documents must be denied.[7]

[7] Allstate is on notice that today's ruling is based on the Court's

CONCLUSION

As explained above, the Court overrules in part and sustains in part Plaintiffs' objections to CCC Intelligent Solutions Inc.'s confidentiality designations (ECF No. 83), grants in part and denies in part Plaintiffs' motion to unseal (ECF No. 96), grants Allstate's motion to retain seal (ECF No. 97), and denies Plaintiffs' latest motion to compel (ECF No. 102).

IT IS SO ORDERED, this 27th day of August, 2026.

S/Clay D. Land

CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

understanding that Allstate does not intend to rely upon the old studies during this litigation. If the Court's understanding is mistaken, Allstate shall notify the Court in writing within seven days of today's order with a docketed notice reserving the right to use the studies. Upon the filing of such notice, counsel for the parties shall confer in good faith within seven days to reach an agreement on the discoverability of certain evidence regarding those studies notwithstanding today's order. If no agreement can be reached, the Court will entertain a succinct, specific motion for reconsideration of today's order.